ALIOTO LAW FIRM
JOSEPH M. ALIOTO (SBN 42680)
TATIANA V. WALLACE (SBN 233939)
One Sansome Street, 35th Floor
San Francisco, CA 94104
Telephone: (415) 434-8900
Email:    jmalioto@aliotolaw.com
              twallace@aliotolaw.com

STARN ● O'TOOLE ● MARCUS & FISHER
A Law Corporation

TERENCE J. O'TOOLE (052154) [*Pro Hac Vice* Application Forthcoming]
ANDREW J. LAUTENBACH (238041) [*Pro Hac Vice* Application Forthcoming]
KUKUI CLAYDON (103780) [*Pro Hac Vice* Application Forthcoming]
733 Bishop Street, Suite 1900
Pacific Guardian Center, Makai Tower
Honolulu, Hawai'i 96813
Telephone: (808) 537-6100
Email:    totoole@starnlaw.com
              alautenbach@starnlaw.com
              kclaydon@starnlaw.com

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Donald Freeland, Jose Brito, Jan Marie Brown, Rosemary D'Augusta, Pamela Faust, Carolyn Fjord, Donald Fry, Michael Malaney, Len Marazzo, Lisa McCarthy, Tim Nieboer, Bill Rubinsohn, Sondra Russell, Clyde Stensrud, Pamela Ward, and Christine Whalen,<br><br>                    Plaintiffs,<br><br>        v.<br><br>Nippon Steel Corporation, Nippon Steel North America, Inc., and 2023 Merger Subsidiary, Inc.,<br><br>                    Defendants. | Case No.<br><br>**COMPLAINT TO PROHIBIT THE ACQUISITION OF UNITED STATES STEEL CORPORATION BY NIPPON STEEL CORPORATION, NIPPON STEEL NORTH AMERICA INC. AND 2023 MERGER SUBSIDIARY, INC. IN VIOLATION OF SECTION 7 OF THE CLAYTON ANTITRUST ACT, 15 U.S.C. § 18** |

3166348

Plaintiffs Donald Freeland, Jose Brito, Jan Marie Brown, Rosemary D'Augusta, Pamela Faust, Carolyn Fjord, Donald Fry, Michael Malaney, Len Marazzo, Lisa McCarthy, Tim Nieboer, Bill Rubinsohn, Sondra Russell, Clyde Stensrud, Pamela Ward, and Christine Whalen (collectively, "**Plaintiffs**"), by and through their undersigned counsel, bring this Complaint to Prohibit the Acquisition of United States Steel Corporation ("**U.S. Steel")** by Japanese steelmaker Nippon Steel Corporation and its subsidiaries Nippon Steel North America Inc. and 2023 Merger Subsidiary, Inc. (collectively "**Nippon**" or "**Defendants**") in violation of Section 7 of the Clayton Antitrust Act, 15 U.S.C. § 18.

## I.    PRELIMINARY STATEMENT

Nippon's proposed acquisition of U.S. Steel violates Section 7 of the Clayton Antitrust Act because it "may substantially lessen competition or tend to create a monopoly" "in any section of the country" in the manufacture and production of steel in the United States.[1]

Nippon is the largest steel manufacturer in Japan and fourth largest steelmaker in the world by market share and volume.  Unless this acquisition is enjoined, Nippon will acquire U.S. Steel, the third largest manufacturer of steel in the United States, and thereby substantially increase concentration in the manufacture and production of steel in the United States.

Steel is one of the most important commodities in American and foreign commerce, and a backbone of American industry with critical uses in the United States, including defense industry products, the manufacture of automobiles, construction, products/buildings, furniture, appliances

---

[1] Section 7 of the Clayton Antitrust Act (15 U.S.C. § 18) provides in pertinent part as follows: "No person engaged in commerce or in any activity affecting commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital . . . where in **any** line of commerce or in **any** activity affecting commerce in **any** section of the country, the effect of such acquisition **_may_** be substantially to lessen competition, or tend to create a monopoly.*"* (Emphasis added).

(such as refrigerators and washing machines), infrastructure, and even common utensils such as forks, knives, spoons, etc.

Nippon's proposed acquisition of U.S. Steel threatens the Plaintiffs and other consumers, not only because Nippon will increase the concentration in those industries, but also because Nippon's proposed acquisition is taking place at a time when the United States steel industry is undergoing a high level of consolidation and where remaining United States steel producers have a greatly diminished global market share compared to the Chinese, Korean and Japanese steel behemoths, including Nippon, which dominate the world industry and dwarf American steel production.

If this acquisition goes forward, the United States steel industry will be comprised of only three American-owned steelmakers – Nucor, Cleveland Cliffs and Steel Dynamics.

The loss of U.S. Steel and the resultant likely lessening of competition by the elimination of U.S. Steel as a significant rival will substantially and directly threaten the Plaintiffs with the likelihood of increased prices of steel products and diminishing steel supply that will have a ripple effect through critical consumer goods, including those used in the United States automobile, construction, home appliances and agriculture industries.

Plaintiffs are both direct and indirect consumers of these steel products and have standing to bring this action pursuant to the authority of Section 16 of the Clayton Antitrust Act, 15 U.S.C. § 26, because they are "threatened" with imminent damage and injury; the danger of higher prices, less quality, service and output; and are encouraged to bring such a suit by the Supreme Court of the United States in *California v. American Stores Co.*, 495 U.S. 271 (1990).

///

///

### *U.S. Steel Corporation is an Iconic American Company and a Vital Component of the Steel Industry in the United States*

1.      U.S. Steel is an iconic American company formed by the acquisition of Carnegie Steel Corporation by J.P. Morgan in 1901.  At one time, U.S. Steel was the largest steel producer, largest corporation in the world and first billion-dollar corporation.  In 1901, U.S. Steel controlled two-thirds of the United States steel production.[2]

2.      In the postwar years, the United States steel industry went into decline, lost significant market share to foreign competitors, and required government assistance to compete with imported steel.

3.      In the past decade, U.S. Steel attempted a resurgence through acquisitions and new technology.  But foreign competitors had already gained huge competitive advantages and greatly increased their market share in the United States and throughout the world.

---

[2] Wikipedia U.S. Steel.

## United States Steel Corporation

 

- American steel company based in Pittsburgh, PA



- Production facilities in U.S. and Europe

- Produces and sells steel products, including flat-rolled and tubular products for customers in multiple industries




- Formed in 1901 through merger of Carnegie Steel Co., Federal Steel Co. and National Steel Co.

- 2nd largest steel producer in U.S. and 24th largest globally



- Nippon Steel announced plans in December 2023 to acquire U.S. Steel for $14.1B

*Source: wikipedia.org/wiki/U.S._Steel*

***The Global Steel Market is Dominated by Foreign Giants***

4.      Currently, the global steel market is dominated by a handful of Asian giants, including Nippon, each of which dwarf U.S. Steel.  Many of these foreign steel manufacturers each dwarf all the top American steel companies combined.

## Market Share of Steel Companies Worldwide
2023



*Source: worldsteel.org/data/top-producers*

5.      In 2023,

a.      Nippon ranked fourth on the world stage as a top producer by volume at 43.66 million tons.[3]

b.      U.S. Steel ranked 24thwith 15.75 million tons[4];

c.      China's China Baowu Steel Group topped the list with 130.77 million tons, eclipsing by two-fold its second ranked competitor.[5]  China Baowu Steel Group's production vastly exceeds the combined tonnage of all major American steel producers.[6]

---

[3] World Steel Association "2024 Steel in Figures."
[4] *Id.*
[5] *Id.*
[6] *Id.*

## Rankings of Top Steel Producers Worldwide
### Production Volume (2023)



*Source: statista.com*

    d.    Only four American steel producers are among the top 47 producers: Nucor Corporation ranked 15 (21.20 million tons), Cleveland Cliffs ranked 22 (17.27 million tons), U.S. Steel at 24 (15.75 million tons) and Steel Dynamics at 42 (10.32 million tons).[7]

    e.    U.S. Steel ranked 4th in annual revenues and 3rd in production volume among the top steel producers in the United States.

---

[7] *Id.*

# Rankings of Top Steel Producers in U.S.
## Annual Revenues (2023)



*Sources: nucor.com/news-release/nucor-reports-results-for-the-fourth-quarter-and-full-year-2023-122919, clevelandcliffs.com/news/news-releases/detail/621/cleveland-cliffs-reports-full-year-and-fourth-quarter-2023, ir.steeldynamics.com/steel-dynamics-reports-fourth-quarter-and-annual-2023-results, macrotrends.net/stocks/charts/X/ united-states-steel/revenue, companiesmarketcap.com/commercial-metals-company/revenue*

# Rankings of Top Steel Producers in U.S.
## Production Volume (2023)



Sources: worldsteel.org/data/top-producers, en.wikipedia.org/wiki/Commercial_Metals_Company

6.      Despite its low position on the world stage, the United States steel industry is a critical component of the United States economy: adding $520 billion to the economy and supporting 2 million jobs in 2024.[8]

7.      All these numbers tell an important tale: the U.S. steel industry is a shadow of its former self, represents a small percentage of world-wide steel production and is challenged to compete against cheaper foreign products.  Allowing Nippon, the fourth largest steel producer in the world, to acquire U.S. Steel will inevitably place control of the American steel market in

---

[8] American Iron and Steel Institute "Profile."

foreign hands and likely result in substantially less competition domestically and abroad and "threaten" damage to Plaintiffs and other direct and indirect consumers of steel products.  At present, Nippon has a substantial impact on U.S. Steel prices.

### *Steel is Used in Every Aspect of Life in the United States*

8.    Steel is the most important building and engineering product in the world, and it is used in every aspect of life.

a.    According to the World Steel Association, the percentage of steel allocated to various sectors is as follows[9]: Buildings and infrastructure 52% (reinforcing bars, sheet products, structural steel);

b.    Mechanical equipment 16% (ranging from heavy machinery to nuts, bolts, knives and forks);

c.    Cars 12% (engine parts, car body, beams);

d.    Metal and metal products 10% (furniture, food and beverage packaging, razors and medical equipment);

e.    Shipping 5% (ships, trains, aircraft);

f.    Household appliances 2% (kitchen utensils, refrigerators, freezers, washing machines and dryers;

g.    Electrical equipment 3% (generators, electric motors, cables, batteries).

---

[9] World Steel Association "World Steel Figures 2023."

## The Use of Steel by Sector



9.    Within these sectors, and highly relevant to this Clayton Antitrust action, and Plaintiffs' standing to bring this action, steel is an integral part of consumer products used and purchased by Plaintiffs and other consumers.

# Consumer Products That Contain Steel



10.    There are six basic steel types[10]:

a.    Stainless steel relied on for its corrosion and temperature resistance and strength (food processing, dairy milk tanks);

b.    Carbon steel, one of the simplest steel alloys, commonly used for car and truck components and structures;

c.    Alloy steel, comprised of various alloying elements commonly used in steel pipes;

d.    Tool steel used for tools, bits and dies;

e.    Weathering steel designed to withstand outdoor and weather elements;

---

[10] World Steel Association, Steel Uses by Sectors. *See also* All About Steel as a Manufacturing Material, Xometry.com//resources/materials/steel

       f.     Electrical steel used by electricians and contractors.

11.    U.S. Steel manufactures most of these types of steel and supplies customers throughout the world primarily in the automotive, construction, consumer (packaging and appliance), electrical, industrial equipment, service center/distribution, structural tubing and energy (oil country tubular goods (OCTG) and line pipe) markets.[11]

12.    83% of vehicles produced in North America use U.S. Steel material in their construction.[12]

13.    Plaintiffs are direct and indirect consumers of these steel products, they own automobiles, appliances, and utensils; they own or rent homes constructed with multiple steel products and travel by air, train, ship and other transportation means that utilize steel.

### *Nippon's Acquisition of U.S. Steel Violates the Clayton Antitrust Act*

14.    On December 16, 2023, Nippon and U.S. Steel announced a definitive agreement whereby Nippon Steel North America, Inc. as "Purchaser," the 2023 Merger Subsidiary, Inc. a wholly owned subsidiary of Purchaser ("Merger Sub") and Nippon Steel Corporation would acquire all of U.S. Steel for approximately $14.1 billion plus the assumption of debt representing a total enterprise value of $14.9 billion.[13]

---

[11] U.S. Steel 2023 Sustainability Report.
[12] U.S. Steel, Automotive Leader. Innovator. Collaborator. Partner.
[13] U.S. Steel Corp., Form 10K For Fiscal Year Ended Dec. 31, 2023. The acquisition contemplates that Merger Sub will merge with and into U.S. Steel Corp. with U.S. Steel Corp. surviving as the wholly owned subsidiary of Purchaser, Nippon Steel North America, Inc.

# Nippon Steel Corporation



- Japanese steel company headquartered in Tokyo



- Production facilities all over the world

- Four business segments – steelmaking, engineering, chemicals, and system solutions



- Formed in 1981 through merger of Yawata Iron & Steel and Fuji Iron & Steel

- Largest producer of crude steel in Japan and 3rd largest in the world



- Announced plans in December 2023 to acquire U.S. Steel for $14.1B

*Source: wikipedia.org/wiki/Nippon_Steel*

15.    Nippon's acquisition of U.S. Steel, if allowed to occur, may result in the world's 4th largest steel maker by market share to acquire the 3rd largest United States based steel manufacturer by market share, resulting in further consolidation of the United States steel industry, the likely lessening of competition, the elimination of a significant rival, and the elimination of Nippon's entry into the United States as a competitor which would result in new plants, new jobs, lower prices, better service, better quality and an increase in output and production.

16.     More specifically, based on 2024 fourth-quarter results, U.S. Steel had a 6.09% market share relative to its competitors in the United States.[14]

17.     Section 7 of the Clayton Antitrust Act seeks to enjoin further consolidation of an already heavily consolidated and concentrated steel industry where the effect of such consolidation "*may be to lessen competition*."

18.     Congress's fundamental goal was "to arrest the trend toward concentration, the tendency to monopoly.... before the consumer's alternatives disappear [ ] through merger".[15] Congress therefore "sought to assure … the courts the power to brake this force at its outset and before it gathered momentum".[16] This policy was most recently articulated in the Jet Blue decision, *United States et al. v. JetBlue Airways Corp. and Spirit Airlines*, Civil No. 23, 10511-WGY, 2024 WL 162876 (D. Mass.2024) where the court permanently enjoined the acquisition of Spirit Airlines by JetBlue.

19.     As the *JetBlue* court noted, Congress used the words "**may be to substantially lessen competition** … to indicate that its concern was with **probabilities**, not certainties"[17] (Emphasis added).

## II.     PLAINTIFFS SEEK AN ORDER OF THE COURT PROHIBITING THE PROPOSED ACQUISITION AND ELIMINATION OF U.S. STEEL

20.     This is a private antitrust action brought under Section 16 of the Clayton Antitrust Act (15 U.S.C. § 26) charging that the acquisition of U.S. Steel by Nippon violates Section 7 of the Clayton Antitrust Act and is seeking an Order of the Court prohibiting the proposed acquisition and elimination of U.S. Steel by Nippon.

---

[14] https://csimarket.com/stocks/competitionSEG2.php?code=X
[15] *United States v. Philadelphia Nat'l Bank*, 374 U.S. 321, 367 (1963).
[16] *Brown Shoe Co. v. United States*, 370 U.S. 294, 317-18 (1962).
[17] *F.T.C. v Hackensack Meridian Health, Inc*., 30 F.4th 160, 166 (3d Cir. 2022).

21.     The proposed acquisition of U.S. Steel for $14.9 billion by Nippon is a violation of Section 7 of the Clayton Antitrust Act, 15 U.S.C. §§ 12-27 ("**Clayton Antitrust Act**"), because the effect of the elimination of U.S. Steel may be to "substantially lessen competition or tend to create a monopoly" in multiple markets in the steel industry.[18]  This lessening of competition by the elimination of U.S. Steel constitutes irreparable injury because a major competitor is eliminated from the market.

22.     If the acquisition goes forward, competition may be lessened in each of the following critical steel markets where U.S. Steel is a manufacturer:

      a.  Buildings and infrastructure;

      b.  Mechanical equipment;

      c.  Cars;

      d.  Metal and metal products;

      e.  Shipping;

      f.  Household appliances, utensils and tools;

      g.  Electrical equipment.

23.     If Nippon desires to enter or expand its presence in the United States, it should compete for such market share with new plants, jobs, lower prices, better service, better quality and better output rather than simply buying U.S. Steel.

24.     The "threatened loss or damage" to Plaintiffs and to the public at large by the potential elimination of U.S. Steel as a competitor in the market is substantial and foreboding, and

---

[18] Section 7 of the Clayton Antitrust Act provides in pertinent part as follows: "No person engaged in commerce or in any activity affecting commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital . . . where in any line of commerce or in any activity affecting commerce in any section of the country, the effect of such acquisition *may* be substantially to lessen competition, or tend to create a monopoly." (Emphasis added).

the proposed acquisition violates the Clayton Antitrust Act as Section 7 is interpreted by the Supreme Court of the United States:

      a.    U.S. Steel is a significant rival of Nippon, as well as a significant rival of other United States based steel manufacturers.

      b.    The acquisition price of $14.9 billion is not trivial, the acquisition follows a trend of consolidation in the industry, and the acquisition could (a) eliminate a significant rival of Nippon and (b) allow Nippon to buy its way into new markets, rather than to enter them competitively.

25.    The current trend toward concentration, the lessening of competition and the tendency to create a monopoly in the steel industry in the United States is manifest and threatens the Plaintiffs with imminent damage and injury by increased prices, less production, inferior service and quality.

26.    Nippon's proposed acquisition of U.S. Steel follows this dangerous trend, will substitute a foreign absentee owner for one of America's iconic companies, which employs nearly 22,000 workers worldwide and 14,000 in the United States in 13 locations.[19] This acquisition may eliminate jobs, and may lead to higher prices, reduction of capacity, amongst other potential damage and injury to the Plaintiffs and other consumers.

27.    The proposed acquisition is prohibited by the binding authority of the Supreme Court of the United States in its decisions in *Brown Shoe Co. v. United States*, 370 U.S. 294 (1962), *United States v. Philadelphia Nat'l Bank*, 374 U.S. 321 (1963), *United States v. Aluminum Co. of America*, 377 U.S. 271 (1964), *United States v. Von's Grocery Co.*, 384 U.S. 270 (1966), *United*

*States v. Pabst Brewing Co*., 384 U.S. 546 (1966), and *United States v. Falstaff Brewing Corp.,*

410 U.S. 526 (1973).

### III.    PARTIES

28.    Plaintiffs named below are individual citizens of cities and states listed below.

> Donald Freeland, Thousand Palms, CA;
> Jose Brito, Reno, NV;
> Jan Marie Brown, Carson City, NV;
> Rosemary  D'Augusta, Millbrae, CA;
> Pamela Faust, Loveland, OH;
> Carolyn Fjord, Winters, CA;
> Donald Fry, Tucson, AZ;
> Michael Malaney, Grandville, MI;
> Len Marazzo, Reno, NV;
> Lisa McCarthy, Naples, FL;
> Timothy Nieboer, Clarkston, MI;
> Bill Rubinsohn, Jenkintown, PA;
> Sondra Russell, Waco, TX;
> Clyde Stensrud, Kirkland, VA;
> Pamela Ward, Garland, TX; and
> Christine Whalen, New Orleans, LA.

29.    Each Plaintiff is a direct and/or indirect actual and potential consumer of steel products and goods including, without limitation, those products and goods previously alleged that are manufactured by U.S. Steel or other steel manufacturers including automotive, construction, consumer (packaging and appliance), utensils, tools, and electrical.

30.    More specifically, each Plaintiff owns one or more automobiles, rents or owns their own residences that incorporate steel products and goods including metal structural members, fasteners and appliances, purchases and utilizes consumer packaging, metal tools and similar consumer items made of steel, including knives, forks and spoons, and potentially will need to buy them in the future.

31.    Because steel products are an integral part of all consumers' lives, including these Plaintiffs, Plaintiffs have clear Article III standing to bring this action because the injury they may suffer if Nippon's acquisition is allowed to proceed, is imminent; traceable to the challenged action; and redressable by a favorable ruling. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

32.    More specifically, and as the United States Supreme Court has often held, "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion LLC v. Ramirez,* 594 U.S. 413, 435 (2021, citing *Clapper v. Amnesty Int'l USA* 508 U.S. 398, 414, n.5 (2013), *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

33.    Defendant Nippon Steel Corporation is a Japanese company doing business abroad and in the United States.  Nippon Steel Corporation's wholly owned subsidiary, Nippon Steel North America, Inc., a New York Corporation, is based in Houston, Texas and is the holding company through which Nippon Steel Corporation owns businesses that conduct operations in the United States.  The 2023 Merger Subsidiary, Inc. a Delaware Corporation, is a wholly owned subsidiary of Nippon Steel North America, Inc. and was incorporated on December 15, 2023, solely for the purpose of engaging in Nippon's acquisition of U.S. Steel.  Each of these entities have individually and collectively entered into an agreement and plan of merger on December 18, 2023, to acquire U.S. Steel.[20]  The result of this transaction is the complete and total acquisition of U.S. Steel by these companies.

34.    Nippon has worldwide steel production and a large presence in the United States.

---

[20] U.S. Steel Corp. Schedule 14A Proxy Statement Jan. 24, 2024.

## Nippon Steel Production Worldwide



*Source: nipponsteel.com/en/company/bases*

## Nippon Steel Production Facilities in U.S.



*Source: nipponsteel.com/en/company/offices/north-central-and-south-america*

35.    U.S. Steel has production facilities throughout the United States.

# U.S. Steel Production Facilities in U.S.



*Source: ussteel.com/about-us/locations*

## IV.    JURISDICTION AND VENUE

36.    This private action is specifically authorized by Section 16 of the Clayton Antitrust Act (15 U.S.C. § 26) which provides in pertinent part that "***any*** person…shall be entitled to sue and have injunctive relief …against ***threatened*** loss or damage by a violation of the antitrust laws." (Emphasis added).

37.    The remedy afforded to private plaintiffs includes divestiture or prohibiting any potential unlawful acquisition.  As was unequivocally stated by the United States Supreme Court in *California v. American Stores Co.,* 495 U.S. 271, 283 (1990), "[T]he literal text of Section 16

is plainly sufficient to authorize injunctive relief [in favor of a private Plaintiff], including an order of divestiture, that will prohibit that conduct from causing that harm."[21]

38.    The private action to vigorously challenge an acquisition is encouraged by the Congress and the Supreme Court of the United States.  In strong and unmistakable language, the Supreme Court has declared: "The Act's other provisions manifest a clear intent to encourage vigorous private litigation against anticompetitive mergers." *American Stores Co.*, 495 U.S. at 284.

39.    Plaintiffs bring this action under the authority of Section 16 of the Clayton Antitrust Act (15 U.S.C. § 26) and allege that the proposed acquisition and elimination of U.S. Steel constitutes a substantial danger and threat of injury to the Plaintiffs because the acquisition may have the effect substantially to lessen competition, eliminate a significant rival and competitor, and tend to create a monopoly in various markets "in any section of the country" in violation of Section 7 of the Clayton Antitrust Act (15 U.S.C. § 18).

40.    This Court has subject matter jurisdiction over this action under Section 16 of the Clayton Antitrust Act, 15 U.S.C. § 26, and 28 U.S.C. §§ 1331 and 1337(a).

---

[21] This private action is specifically authorized by Section 16 of the Clayton Antitrust Act on the grounds that the proposed acquisition threatens loss or damage to the Plaintiffs by reason of the potential lessening of competition in the steel market in violation of the antitrust laws.

Section 16 of the Clayton Antitrust Act, 15 U.S.C. § 26, provides: "**Injunctive relief for private parties; exception; costs**: Any person, firm, corporation, or association shall be entitled to sue for … against **threatened** loss or damage by a violation of the antitrust laws, including section[] . . . 18 … this title, when and under the same conditions and principles as injunctive relief against **threatened** conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of proper bond against damages for an injunction improvidently granted and a showing that the **danger** of irreparable loss or damage is **immediate**, a preliminary injunction may issue . . . In any action under this section in which the Plaintiff substantially prevails, the court shall award the cost of suit, including a reasonable attorneys' fee, to such Plaintiff."  (Emphasis added).

41.     The proposed acquisition substantially affects interstate and foreign commerce of the United States in that steel products and materials, and those manufactured by U.S. Steel, are in the constant flow of the interstate and foreign commerce of the United States.  Because Defendants transact business in this judicial district, venue is proper pursuant to 15 U.S.C. §§ 22 and 26, and 28 U.S.C. § 1391.

## V.     ADDITIONAL APPLICABLE FACTS

### *The Trend of Mergers and Acquisitions in the Steel Industry*

42.     Consolidation in the steel industry has been a long-term trend and has increased in the recent decades.[22]  In 2020 and 2021, and through consolidation, the top United States steel makers, Cleveland Cliffs, Nucor, and U.S. Steel increased their collective share of the United States steelmaking capacity from 47% to 68%.[23]  This continued consolidation of the steel industry has eliminated smaller players and reduced competition by acquisition and otherwise.

43.     Steel companies in the United States have lost significant market share in the United States market to foreign companies that now control over 50% of the United States market.

---

[22] Cleveland Cliffs acquired AK Steel in 2019 and within a year acquired ArcelorMittal USA in 2020. U.S. Steel bought Big River Steel in 2021.
[23] Applied Insights, "Steel Market Consolidation and Capacity Update."

## Market Share of Steel Companies in U.S.
### As of Q3 2024



Source: csimarket.com/stocks/competitionSEG2.php?code=X

44.     Soaring prices have helped fuel consolidation in the steel industry this decade. Steel prices more than quadrupled near the start of the pandemic to nearly $2,000 per metric ton and later to around $800 per metric ton, which is still at the top of the spectrum over the past six years.[24]

45.     Nippon's acquisition of U.S. Steel will force further consolidation among less than a handful of steel producers in the United States and substantially threatens price-fixing and price stabilization among the remaining manufacturers.

---

[24] El Pais, Economy and Business, Aug. 15, 2023.

46.     Companies are incentivized to maximize profits.  Competitive markets force companies to reduce prices or improve products to offer customers better deals than their rivals. Sometimes markets do not work this way: instead of fierce competition, companies accommodate their mutual desire for higher profits and thus engage in activities designed to soften competition with each other.  Antitrust law refers to this as coordination or coordinated behavior, and it may come through formal agreements, implied understandings, or parallel accommodating conduct. Regardless of how it is accomplished, coordinated behavior comes at a price to consumers who face higher prices and/or reduced output.  The Clayton Antitrust Act prohibits mergers and acquisitions that increase the risk of coordinated effects, which may substantially lessen competition.[25]

### *Relevant Geographic Markets*

47.     The Clayton Antitrust Act bars acquisitions where "**any** activity affecting commerce **in any section of the country**" where the effect of such acquisition "**may** be to substantially to lessen competition, or to tend to create a monopoly." 15 U.S.C. § 18. (Emphasis added).

48.     Here, steel manufacturing is the relevant product market.  The primary relevant geographic market is the United States where additional consolidation of an ever-decreasing number of steel producers may substantially lessen competition.  The effects may be "in any section of the country," including cities, regions, states, etc. *Brown Shoe Co. v. U.S.*, 370 U.S. 294 (1962).

---

[25] According to Adam Smith, the father of free enterprise, the more competitors that there are, "their competition would be just so much the greater, and the chance of their combining together, in order to raise the price, just so much the less." Adam Smith, *The Wealth of Nations*, Modern Library Ed., Book II, Ch. V, pp. 391-92.

49.     Unlike other products and services, steel permeates almost every aspect of consumer's daily lives–the automobiles they drive, the houses they own or rent, the appliances they purchase, the packaging they use for shipping, and the utensils they use to eat.

### Anticompetitive Effects of the Transaction

### U.S. Steel Will be Eliminated as a Competitor in the United States and Worldwide Steel Markets

50.     The proposed acquisition will allow Nippon, the world's fourth largest steelmaker to eliminate the third largest steelmaker in the United States.

51.     The proposed acquisition will give Nippon an additional 6+ % share of the world steel market where it already holds a large share, and it will allow Nippon to further buy its way into the United States market rather than enter through competition, in contravention of the United States Supreme Court's decisions in *Brown Shoe Co. v. United States*, 370 U.S. 294 (1962) and *United States v. Falstaff*, 410 U.S. 526 (1973).[26]

52.     As set forth by *Brown Shoe Co*., it is the policy of the United States making competition rather than merger and acquisition, as the rule of trade.[27]

53.     Post-acquisition steel prices may increase affecting major United States industries that rely on steel materials, such as United States. automobiles, homes and appliances, electrical equipment and, ultimately, consumers like Plaintiffs.

---

[26] Discussing how a company who was not a competitor in a geographic market, nor would its merger with a smaller company in the market give it a dominant market force, was still a potential competitor to enter the market, and thus the proposed acquisition posed a threat to competition.

[27] "A company's history of expansion through mergers presents a different economic picture than a history of expansion through unilateral growth.  Internal expansion is more likely to be the result of increased demand for the company's products and is more likely to provide increased investments in plants, more jobs and greater output.  Conversely, expansion through merger is more like to reduce available consumer choice while providing no increase in industry capacity, jobs or output.  It was for these reasons, among others, Congress expressed its disapproval of successive acquisitions. **Section 7 was enacted to prevent even small mergers that added to concentration in an industry**." *Brown Shoe Co.,* 370 U.S. at 345, n. 72 (emphasis added).

54.    The proposed acquisition may also eliminate part of the U.S. Steel workforce, leaving U.S. Steel controlled by an absentee foreign owner in Japan.

### The Relevant Markets are Highly Concentrated and the Proposed Acquisition of U.S. Steel May Result in Presumptively Unlawful Market Concentrations

55.    Market concentration is an indication of the level of competition in a market.  The more concentrated a market, and the more a transaction may increase concentration in a particular market, the more likely it is that a transaction may result in a meaningful lessening in competition.

56.    Nippon's acquisition of U.S. Steel may cause substantial "lessening of competition" and thereby irreparable injury to Plaintiffs and to all consumers.

57.    If U.S. Steel is acquired, Plaintiffs may sustain irreparable injury for which damages may be inadequate to compensate Plaintiffs in that a direct rival may be extirpated and consumer choices for steel products and materials eradicated.  Consumer choice will be eliminated.  If U.S. Steel is purchased, it can't come back and a major competitor would then be gone, causing irreparable injury to the plaintiffs which cannot otherwise be compensated.

58.    Moreover, there may likely be no startup entrants into the steel market because new entrants could face significant barriers to entry, including entrenched, foreign steel making giants which dominate the market and the high capital costs of entry.

59.    Since the prospect of a new start-up entry is unlikely, the entry of new competitors in the marketplace cannot serve as a basis to mitigate the anticompetitive effects that may result from Nippon's proposed acquisition.

60.    Accordingly, Plaintiffs bring this action for both preliminary and permanent injunctive relief against the Defendants' proposed acquisition of U.S. Steel and seek an order prohibiting Nippon from acquiring U.S. Steel.

61.     Courts have enjoined mergers and acquisitions, such as this, where a dominant player seeks to acquire a smaller rival resulting in further consolidation of an already consolidated market.  "Section 7 was enacted to prevent even small mergers that added to concentration in an industry." *Id*., 370 U.S. at 345, n72.  *See also United States v. Aluminum Co. of Am.* supra.

///

///

# Key Section 7 Cases
## Market Share and Rankings, Pre-Merger vs. Post-Merger

| Acquiring Company Market Share | Acquired Compan(ies) Market Share | Merged Entity Market Share | Result |
|---|---|---|---|
| **VONS** • 4.7% share • #3 in market | **Shopping Bag** • 4.2% share • #6 in market | • 7.5% share • #2 in market | **ENJOINED** |
| **ALCOA** • 27.8% share • #1 in market | **ROME CABLE** • 1.3% share • #9 in market | • 29.1% share | **ENJOINED** |
| **Pabst Blue Ribbon** • 5.48% share tri-state • #10 nationwide • #4 statewide (WI) • #7 tri-state (WI, Ill, Mich) | **Blatz** • 5.84% share tri-state • #18 nationwide • #1 statewide (WI) • #6 tri-state (WI, Ill, Mich) | • 11.32% share tri-state • #5 nationwide • #1 statewide (WI) • 4.49% share nationwide • 23.95% share statewide | **ENJOINED** |
| **Brown Shoe** • 6% manufacturing share • #3 in manufacturing | **Kinney shoes** • .05% manufacturing share • #12 in manufacturing • 2% retail share | • 6% manufacturing share • #3 in manufacturing • 9.5% retail share • #2 in retail market | **ENJOINED** |
| **PNB** THE PHILADELPHIA NATIONAL BANK • #2 in market | **Girard Trust Corn Exchange Bank** • #3 in market | • #1 in market • 36% share (of assets) | **ENJOINED** |

## VI.    VIOLATIONS ALLEGED

### *Clayton Antitrust Act, Section 7 15 U.S.C. § 18*

62.    The effect of the proposed acquisition may be substantially to lessen competition, or tend to create a monopoly, in interstate trade in commerce in the relevant markets in violation of Section 7 of the Clayton Antitrust Act, 15 U.S.C. § 18.

63.    Unless enjoined, the proposed acquisition may, and most probably could, have the following potential anticompetitive effects in the relevant markets, among others:

    a.    Actual and potential competition between Nippon and U.S. Steel will be eliminated;

    b.    Competition in general among other steel producers in the United States and worldwide may be lessened substantially;

    c.    Competition in many sections of the country, including where Plaintiffs reside, may be substantially lessened causing irreparable injury by reason of the elimination of a major competitor, thereby eliminating consumer choice;

    d.    Price of steel products and materials may be higher than they otherwise should be;

    e.    Capacity may be lower than it otherwise could be;

    f.    Consumer choice may be lessened;

    g.    Service may be lessened;

    h.    Quality may be lessened;

    i.    Job layoffs and potentially huge economic impacts on United States industry that relies on steel that may translated into higher prices for Plaintiffs and other consumers.

64.    Plaintiffs are entitled to bring suit under Section 16 of the Clayton Antitrust Act, 15 U.S.C. § 26, to obtain preliminary and permanent injunctive relief to prohibit the proposed acquisition, and to recover their costs of suit, including reasonable attorneys' fees.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief from this Honorable Court:

A.    Declaring, finding, adjudging and decreeing that the agreement of Defendants to acquire U.S. Steel violates Section 7 of the Clayton Antitrust Act, 15 U.S.C. § 18;

B.    Preliminarily enjoining Defendants from consummating the acquisition of U.S. Steel, or, if necessary, ordering divestiture, during the pendency of this action;

C.    Permanently enjoining Defendants and U.S. Steel from consummating the acquisition or requiring divestiture.

D.    Declaring the contract between Defendants and U.S. Steel to be null and void and against public policy of the United States which declares that competition rather than combination is the rule of trade in the United States;

E.    Awarding Plaintiffs their cost of suit, including reasonable attorneys' fees, as provided by Section 16 of the Clayton Antitrust Act, 15 U.S.C. § 26;

F.    Granting Plaintiffs such other and further relief to which they may be entitled and which the Court finds just and proper.

DATED:        February 5, 2025

*/s/ Joseph M. Alioto*

ALIOTO LAW FIRM
Joseph M. Alioto
Tatiana V. Wallace

STARN O'TOOLE MARCUS & FISHER
(*Pro Hac Vice* Applications forthcoming)
Terence J. O'Toole
Andrew J. Lautenbach
Kukui Claydon

Attorneys for Plaintiffs