UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD FREELAND, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>NIPPON STEEL CORP., et al.,<br><br>    Defendants. | Case No. 25-cv-01240-EKL<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 34 |

Consumer plaintiffs brought this antitrust action to enjoin the acquisition of U.S. Steel by Nippon Steel. Plaintiffs claim that the merger will increase concentration in the alleged market for United States steel manufacturing, triggering a host of anticompetitive consequences: higher prices, lower output, and reduced choice and innovation. Defendants move to dismiss the complaint for lack of standing and for failure to state a claim. Having carefully reviewed the parties' briefs and relevant authority, the Court finds this matter suitable for disposition without oral argument. *See* Civil L.R. 7-1(b). For the following reasons, Defendants' motion is GRANTED with leave to amend and the hearing scheduled for July 9, 2025, is VACATED.

**I.      BACKGROUND**

This case arises from Defendant Nippon Steel Corp.'s acquisition of U.S. Steel. According to the complaint, Nippon Steel is "the fourth largest steel producer in the world." Compl. ¶ 7, ECF No. 1. U.S. Steel is alleged to be "the 3rd largest United States based steel manufacturer by market share." *Id*. ¶ 15. "U.S. Steel manufactures . . . steel and supplies customers throughout the world primarily in the automotive, construction, consumer (packaging and appliance), electrical, industrial equipment, service center/distribution, structural tubing and energy (oil country tubular goods (OCTG) and line pipe) markets." *Id*. ¶ 11.

1  Plaintiffs are "direct and indirect consumers" of products that contain steel.[1] *Id*. ¶ 13. "More specifically, each Plaintiff owns one or more automobiles, rents or owns their own residences that incorporate steel products and goods including metal structural members, fasteners and appliances, purchases and utilizes consumer packaging, metal tools and similar consumer items made of steel, including knives, forks and spoons, and potentially will need to buy them in the future." *Id*. ¶ 30.

Plaintiffs claim that allowing Nippon Steel "to acquire U.S. Steel will inevitably place control of the American steel market in foreign hands and likely result in substantially less competition domestically and abroad and 'threaten' damage to Plaintiffs[.]" *Id*. ¶ 7. The merger "substantially and directly threaten[s] the Plaintiffs with the likelihood of increased prices of steel products and diminishing steel supply that will have a ripple effect through critical consumer goods, including those used in the United States automobile, construction, home appliances and agriculture industries." *Id*. at 3.

Plaintiffs assert a single claim for violation of § 7 of the Clayton Act, asking the Court to enjoin the merger.[2] Defendants move to dismiss. Mot. to Dismiss, ECF No. 34 ("Mot."). On June 17, 2025, Plaintiffs sought a temporary restraining order. *See* Pls.' Mot. for Immediate TRO, ECF No. 52. On June 18, 2025, the Court heard argument from all parties, focusing on issues that overlap with the arguments raised in Defendants' motion to dismiss. The Court denied Plaintiffs' TRO motion and held that Plaintiffs failed to plausibly state a claim. Order Denying TRO, ECF No. 60. This Order provides additional reasoning to support dismissal of Plaintiffs' claim.

## II.  LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(1), a court must dismiss a complaint if the court lacks subject matter jurisdiction. Plaintiffs must demonstrate Article III standing for each claim and for each form of relief sought. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430-31

---

[1] Plaintiffs are "Donald Freeland, Jose Brito, Jan Marie Brown, Rosemary D'Augusta, Pamela Faust, Carolyn Fjord, Donald Fry, Michael Malaney, Len Marazzo, Lisa McCarthy, Tim Nieboer, Bill Rubinsohn, Sondra Russell, Clyde Stensrud, Pamela Ward, and Christine Whalen." *Id*. at 2.

[2] On June 18, 2025, Defendants closed the merger transaction. *See* Admin. Mot. to Vacate the TRO Hr'g at 2, ECF No. 55 ("Mot. to Vacate").

2

(2021). To establish Article III standing, Plaintiffs must show that they "[have] suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Murthy v. Missouri*, 603 U.S. 43, 57 (2024) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). A plaintiff seeking injunctive relief must demonstrate "a substantial risk of future injury." *Id*. at 68. "[A] grievance that amounts to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law does not count as an 'injury in fact.' And it consequently does not show standing." *Carney v. Adams*, 592 U.S. 53, 58 (2020).

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To avoid dismissal, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded facts allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For purposes of a Rule 12(b)(6) motion, the court generally "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

### III.   DISCUSSION

Defendants move to dismiss the complaint on several grounds. First, Defendants argue that Plaintiffs lack Article III standing to challenge the merger because they assert a "generalized grievance" rather than a particularized injury. Second, Defendants contend that Plaintiffs lack antitrust standing because they are not participants in the alleged market for steel – rather, they are purchasers (or users) of various downstream products that contain steel. Third, Defendants contend that Plaintiffs fail to plausibly allege that the merger violates Clayton Act § 7, which prohibits mergers where the effect "may be substantially to lessen competition, or to tend to create

3

a monopoly." 15 U.S.C. § 18.  The Court addresses these issues in turn.

### A.      Article III Standing

Defendants argue that Plaintiffs assert a "generalized grievance" instead of a particularized injury as required for Article III standing.  Mot. at 9, 13-16.  Defendants emphasize Plaintiffs' allegation that "steel products are an integral part of all consumers' lives."  Compl. ¶ 31.  Defendants argue that because Plaintiffs' "alleged injuries would be shared by all or nearly all of the hundreds of millions of Americans" who purchase or use a product that contains steel, the injuries are not sufficiently particularized for purposes of Article III standing.  Mot. at 14.

The fact that an injury is widely felt does not necessarily make it a generalized grievance that is insufficient for Article III standing.  Instead, the prohibition against "generalized grievances" primarily serves to prevent federal courts from issuing advisory opinions – a role not contemplated by the Constitution.  *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 378-79, 386 (2024) ("[G]eneral legal, moral, ideological, and policy concerns do not suffice on their own to confer Article III standing to sue in federal court."); *see also Perry v. Newsom*, 18 F.4th 622, 634 (9th Cir. 2021) (holding that plaintiffs lacked standing to vindicate harm to "the sanctity of the judicial process").  This principle is not offended when a plaintiff has a "personal stake" in a case or controversy, *All. for Hippocratic Med.*, 602 U.S. at 379, even if many other Americans also have a personal stake.

Here, Plaintiffs have articulated a particularized injury as required for Article III standing.  Plaintiffs allege that they use or purchase products containing steel, and that the price of these products may increase because of the merger.  Compl. ¶¶ 13, 26, 53.  Thus, Plaintiffs have articulated an injury that is personal to each of them in the form of out-of-pocket losses.

In contrast to the cases cited by Defendants, Plaintiffs allege more than a generalized interest in enforcement of the antitrust laws.  For example, in *Yoshimoto v. Alaska Airlines, Inc.*, a "group of airline passengers and former travel agents" sued to block Alaska Airlines' acquisition of Hawaiian Airlines.  Order Granting Mot. to Dismiss at 1, No. 24-cv-00173 (D. Haw. Aug. 12, 2024), ECF No. 45.  The plaintiffs lacked Article III standing because their injury was nothing more than the loss of "the salutary benefits of the competition that Hawaiian brings" to the market.

*Id.* at 7. The plaintiffs did not allege that they actually traveled – or even planned to travel – on any of the routes that might be affected by the merger. Because the plaintiffs did not allege any actual or imminent injury from the merger, plaintiffs asserted nothing more than an "abstract and generalized harm to a citizen's interest in the proper application of the law." *Id.* at 9 (quoting *Carney*, 592 U.S. at 58).[3] Similarly here, if Plaintiffs alleged nothing more than an abstract interest in enforcement of the antitrust laws, they would lack Article III standing.

However, even though Plaintiffs allege a particularized injury, that does not end the standing inquiry. Article III standing also requires Plaintiffs to allege – and later, to prove – that their injury is "fairly traceable" to the Defendants' conduct. *Murthy*, 603 U.S. at 57. "Like the injury in fact requirement, the causation requirement screens out plaintiffs who were not injured by the defendant's action." *All. for Hippocratic Med.*, 602 U.S. at 383. Because the parties did not address traceability in their briefs, the Court will reserve judgment on this issue. However, the Court anticipates that traceability will be particularly hard for these Plaintiffs to demonstrate. *See, e.g., Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*, No. 13-cv-01180-BLF, 2015 WL 4755335, at *14 (N.D. Cal. Aug. 11, 2015) ("Typically, antitrust claims based on sprawling and indefinite markets are readily dismissed by the courts for lack of Article III and antitrust standing."). Plaintiffs are on notice that they must plausibly allege all the requirements for Article III standing in their amended complaint.

### B. Plaintiffs' Clayton Act § 7 Claim

Defendants contend that Plaintiffs fail to state a claim because they lack antitrust standing and because the complaint does not plausibly allege anticompetitive effects arising from the merger. The Court agrees.

---

[3] In the other case cited by Defendants, the plaintiffs lacked Article III standing for a similar reason. *See Whalen v. Albertsons Cos.*, No. 23-cv-00459-VC, 2023 WL 8812882, at *1 (N.D. Cal. Dec. 20, 2023) ("The plaintiffs have again failed to provide enough information about their own situations to adequately allege that they are likely to suffer an injury from the proposed merger.").

### 1. Antitrust Standing

"Antitrust standing is distinct from Article III standing. A plaintiff who satisfies the constitutional requirement of injury in fact is not necessarily a proper party to bring a private antitrust action." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1054 n.3 (9th Cir. 1999) (citation omitted). Section 16 of the Clayton Act permits a private plaintiff to obtain injunctive relief for a Section 7 violation upon showing "threatened loss or damage." 15 U.S.C. § 26; *see also Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 122 (1986) ("[A] plaintiff seeking injunctive relief under § 16 of the Clayton Act must show a threat of antitrust injury[.]").

Plaintiffs must also allege that their threatened loss or damage constitutes "antitrust injury" – that is, injury "of the type the antitrust laws were intended to prevent." *Am. Ad Mgmt.*, 190 F.3d at 1055 (quoting *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990)). "Antitrust injury requires the plaintiff to have suffered its injury in the market where competition is being restrained." *Id.* at 1057. By contrast, "[p]arties whose injuries . . . are experienced in another market do not suffer antitrust injury." *Id.*; *see also Bhan v. NME Hosps., Inc.*, 772 F.2d 1467, 1470 (9th Cir. 1985); *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 161 (2d Cir. 2016) ("[T]o suffer antitrust injury, the putative plaintiff must be a participant in the very market that is directly restrained.").

Here, Plaintiffs fail to plausibly allege antitrust injury, thus they lack antitrust standing. Plaintiffs allege that "steel manufacturing is the relevant product market" and the "relevant geographic market is the United States."[4] Compl. ¶ 48. But Plaintiffs do not participate in this relevant market, either directly or indirectly. Plaintiffs do not buy the relevant product – steel – directly from U.S. Steel, and they do not buy steel indirectly from customers of U.S. Steel. Instead, Plaintiffs are "consumers of the goods that are made with" steel. Opp. at 7; *see also id.* at 8 (describing Plaintiffs as "regular consumers of the goods that are made with" steel). Thus, Plaintiffs participate in myriad other markets that are distinct from the claimed relevant market for

---

[4] Defendants contest the plausibility of this relevant market. *See* Mot. at 21-23. Indeed, the allegations in the complaint are barebones. But for purposes of this motion, the Court assumes without deciding that steel manufacturing in the United States is a plausible relevant market.

steel manufacturing – including purported markets for buildings and infrastructure, mechanical equipment, cars, shipping, household appliances, utensils, tools, and electrical equipment. Compl. ¶ 22. "Because these markets are distinct, Plaintiffs have not alleged antitrust injury." *Hogan v. Amazon.com, Inc.*, No. 24-1893, 2025 WL 869202, at *1 (9th Cir. Mar. 20, 2025).

There is no telling how far removed any particular Plaintiff is from "the market where competition is being restrained." *Am. Ad Mgmt.*, 190 F.3d at 1057. As Plaintiffs acknowledge, the purported anticompetitive effects in the steel market would reach Plaintiffs only indirectly, as "a ripple effect through" various other markets. Compl. at 3. Within each of these separate markets, the potential harm to the Plaintiffs is varied and attenuated. For example, Plaintiffs allege that they "own or rent homes constructed with multiple steel products and travel by air, train, ship and other transportation means that utilize steel." Compl. ¶ 13. If the merger results in a higher price for steel, will a Plaintiff's landlord increase rent – and if so, by how much? Will a commuter bus service increase the fare of a ticket because the bus incorporates steel-based parts? One of the key purposes of the antitrust injury requirement is to avoid needlessly injecting these impossible questions into already complex cases. *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 543 (1983).

This is not a case lacking potential plaintiffs. The nation's great automakers, construction companies, and consumer product manufacturers – and many other companies – participate more directly in the market for steel. *See id.* at 545 (observing that the "existence of more direct victims" weighs against expanding antitrust standing to reach claims brought by indirect victims). Surely, these companies have sufficient incentive to challenge the merger if it is expected to raise prices, reduce output, or diminish quality and innovation for such a critical input as steel. But they have not sued – and that is telling.

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss for lack of antitrust standing.[5]

---

[5] Defendants also argue that Plaintiffs lack standing because "only **direct** purchasers have standing to seek damages for federal antitrust violations." *See* Mot. at 17 (citing *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 746 (1977)). Plaintiffs respond that *Illinois Brick* does not bar their claims for injunctive relief. Opp. at 12-13. To be clear, the Court does not rely on *Illinois Brick* in

7

2. **Anticompetitive Effects**

"Section 7 of the Clayton Act generally prohibits business acquisitions whose effect 'may be substantially to lessen competition, or [to] tend to create a monopoly' in a relevant market." *Dehoog v. Anheuser-Busch InBev SA/NV,* 899 F.3d 758, 762 (9th Cir. 2018) (quoting 15 U.S.C. § 18). To make a prima facie case that a merger is anticompetitive, Plaintiffs must "adequately alleg[e] facts that an acquisition creates 'an appreciable danger' or a 'reasonable probability' of anticompetitive effects in the relevant market." *Id.* at 763 (first quoting *Saint Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775, 788 (9th Cir. 2015); and then quoting *FTC v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1160 (9th Cir. 1984)). "[T]he very wording of § 7 requires a prognosis of the *probable* future effect of the merger." *Brown Shoe Co. v. United States*, 370 U.S. 294, 332 (1962) (emphasis added). "Merely alleging the elimination of a rival does not plausibly support an inference of an appreciable danger of anticompetitive effects in a relevant market." *DeMartini v. Microsoft Corp.*, 662 F. Supp. 3d 1055, 1065 (N.D. Cal. 2023) (citation omitted).

Here, Plaintiffs claim that the merger may lead to anticompetitive effects by eliminating U.S. Steel as an actual competitor, or by eliminating Nippon Steel as a potential competitor, in the market for steel manufacturing in the United States. *See* Compl. ¶¶ 20-21, 24, 39, 50-51. The Court addresses these theories in turn.

a. **Elimination of actual competition**

Plaintiffs must allege facts supporting that the probable effect of the merger may be substantially to lessen competition. *Dehoog*, 899 F.3d at 763. "Plaintiffs' general allegation that the merger may cause 'higher prices, less innovation, less creativity, less consumer choice, decreased output, and other potential anticompetitive effects' is insufficient." *DeMartini*, 662 F. Supp. 3d at 1052 (citation omitted). Here, Plaintiffs' primary theory is that the merger will eliminate an actual competitor in the steel manufacturing market in the United States. The

---

holding that Plaintiffs' lack antitrust standing. The issue here is not merely that Plaintiffs are indirect purchasers of steel – they are not. Instead, they participate in separate markets as purchasers or users of products that may include steel as an input.

premise of this theory is that Nippon Steel and U.S. Steel presently compete, and that through the merger they will become one firm.

Plaintiffs claim that "[t]he merger of firms with significant market shares" by itself is sufficient to show that the merger is anticompetitive. Opp. at 18. The Supreme Court has instructed that "[t]he market share which companies may control by merging is one of the most important factors to be considered when determining the probable effects of the combination on effective competition in the relevant market." *Brown Shoe*, 370 U.S. at 343; *see also United States v. Philadelphia Nat'l Bank*, 374 U.S. 321, 363 (1963) (emphasizing that courts should consider whether the "merger produces a firm controlling an undue percentage share of the relevant market"). However, market shares are "not conclusive indicators of anticompetitive effects." *United States v. Gen. Dynamics Corp.*, 415 U.S. 486, 498 (1974). Instead, courts must examine "the particular market – its structure, history and probable future." *Id*. (quoting *Brown Shoe*, 370 U.S. at 322 n.38).

Plaintiffs rely on several Supreme Court opinions to support their position that the merger is anticompetitive because it will increase the merged firm's market share and market concentration. For example, in *Brown Shoe*, the merging firms "had captured substantial portions" of the relevant markets and "the merger intensified this existing concentration." 370 U.S. at 343 (summarizing evidence that the merging firms achieved a combined share that "exceeded 20%" and even "exceeded 40%" in certain local markets). In *Philadelphia National Bank*, the merger would have "result[ed] in a single bank's controlling at least 30%" of the relevant market. 374 U.S. at 364. In *United States v. Continental Can Co*., the merger resulted in a merged firm controlling 25% of the relevant market. 378 U.S. 441, 461 (1964). In *United States v. Aluminum Co. of America*, due to the merger, the market leader controlled 29.1% of the relevant market. 377 U.S. 271, 273-74, 278-80 (1964). Finally, in *United States. v. Von's Grocery Co*., "two of the most successful and largest" grocery chains "merged to become the second largest chain" in the relevant market. 384 U.S. 270, 277 (1966).

These cases do not help the Plaintiffs here because the complaint is devoid of non-conclusory allegations about the probable effect of the merger in terms of market share or

9

1  concentration. Plaintiffs have not alleged that Nippon Steel and U.S. Steel, post-merger, would
2  hold a significant market share. Plaintiffs allege only that "U.S. Steel had a 6.09% market share
3  relative to its competitors in the United States." Compl. ¶ 16. But, as Plaintiffs acknowledge,
4  "Plaintiffs have not alleged the specific market share that Nippon holds in the United States steel
5  market" at all. Opp. at 18 n.1. Without this information, the Court cannot infer how the merger
6  will impact market shares or concentration.[6]

7  Indeed, it is not even clear from the complaint whether Nippon Steel currently competes in
8  the market for steel manufacturing in the United States. On this point, Plaintiffs' allegations are
9  ambiguous and contradictory. For example, Plaintiffs allege that "U.S. Steel is a significant rival
10 of Nippon," Compl. ¶ 24a, but Plaintiffs do not specify that this rivalry is in the relevant U.S.
11 market. Plaintiffs also allege, without any detail, that Nippon Steel has "a large presence in the
12 United States." *Id.* ¶ 34. This conclusory allegation contradicts other allegations in the complaint,
13 which suggest that Nippon has not even entered the U.S. market. *See, e.g.*, *id.* ¶ 24a (alleging that
14 the merger will "allow Nippon to buy its way into new markets, rather than to enter them
15 competitively").

16 In sum, Plaintiffs do not plausibly allege probable anticompetitive effects of the merger
17 through the elimination of actual competition.

### b. Elimination of potential competition

19 Plaintiffs also hint at another theory for challenging the merger: the elimination of Nippon
20 Steel as a potential competitor in the market for manufacturing steel in the United States.
21 Plaintiffs allege that the merger would "allow Nippon to buy its way into new markets, rather than
22 to enter them competitively." Compl. ¶ 24a; *see also id.* ¶ 51 & n.26. The Supreme Court has
23 recognized that a merger may be anticompetitive when the acquiring firm is "a potential
24 competitor and likely to exercise substantial influence on market behavior." *United States v.*
25 *Falstaff*, 410 U.S. 526, 531-32 (1973). "Entry through merger by such a company" may violate

---

[6] Plaintiffs allege that the merger will increase Nippon Steel's share *outside* of the United States market. *See id.* ¶ 51 (alleging that the merger "will give Nippon an additional 6+ % share of the world steel market"). But Plaintiffs must allege probable anticompetitive effects "in . . . the country." 15 U.S.C. § 18.

§ 7 "because the entry eliminates a potential competitor exercising present influence on the market." *Id.*

For Plaintiffs' potential competition theory to be viable, "[t]wo essential preconditions must exist": First, Nippon Steel must have "feasible means for entering" the market "other than by acquiring" U.S. Steel, and second, Nippon Steel's alternate means of entry must "offer a substantial likelihood of ultimately producing de-concentration of that market or other significant procompetitive effects." *United States v. Marine Bancorp.*, 418 U.S. 602, 633 (1974). Here, Plaintiffs have not alleged any facts about Nippon Steel's intent, plans, or capabilities to enter the market for manufacturing steel in the United States through means other than the merger. Thus, Plaintiffs have not plausibly alleged that the merger would eliminate Nippon Steel as a potential competitor.[7]

Accordingly, because Plaintiffs do not plausibly allege any probable anticompetitive effects of the merger, the Court GRANTS Defendants' motion to dismiss for failure to state a Clayton Act § 7 claim.

### C. Dismissal is With Leave to Amend

The Court grants leave to amend because this is the Court's first ruling on the legal sufficiency of Plaintiffs' allegations. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (holding that the "court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995))).

Additionally, Plaintiffs indicate that they may add new claims in an amended complaint. Plaintiffs have represented that "Nippon intends to engage in interlocking directorates with U.S. Steel, in violation of Section 8 of the Clayton Act" and that it "will invest nearly $3.0 billion in

---

[7] Plaintiffs do not expressly argue that the merger would eliminate Nippon Steel as a "perceived competitor" – *i.e.*, one that is so "positioned on the edge of the market that it exert[s] beneficial influence on competitive conditions in that market." *Falstaff*, 410 U.S. at 532-33. In any event, this theory is implausible because Plaintiffs do not allege that any steel manufacturer in the United States perceives Nippon Steel as a potential competitor. To the contrary, Plaintiffs allege that steel prices have been rising over the past six years, Compl. ¶ 44, which undermines an inference that Nippon Steel is currently perceived as a competitor that constrains steel prices in the United States.

11

1 plants in the United States coupled with a pledge that Nippon will not compete with those plants in violation of Section 1 of the Sherman Act." Joint Case Mgmt. Statement at 3, ECF No. 43.

The Court cannot determine whether Plaintiffs could plausibly allege a factual basis to support these potential claims under Sherman Act § 1 and Clayton Act § 8, as these claims have not yet been asserted. However, the Court offers two preliminary observations. First, these potential claims may suffer from the same standing deficiencies identified above. Second, the viability of these claims depends on the structure of the merger. The complaint alleges that, through the merger, U.S. Steel will become a "wholly owned subsidiary" of Nippon Steel. Compl.¶ 14 n.13; *see also* Mot. to Vacate at 2 (confirming that "U.S. Steel is now a subsidiary of Nippon Steel"). Thus, it is unlikely that Plaintiffs could plausibly allege a Sherman Act § 1 claim. *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 777 (1984) (A company "and its wholly owned subsidiary [] are incapable of conspiring with each other for purposes of § 1 of the Sherman Act."). It is also unlikely that Plaintiffs could plausibly allege a Clayton Act § 8 claim because the prohibition against interlocking directorates applies only if two firms are "competitors." *Bankamerica Corp. v. United States*, 462 U.S. 122, 124 (1983) (quoting 15 U.S.C. § 19). A parent company and its wholly owned subsidiary are not competitors. *See Copperweld*, 467 U.S. at 771 ("A parent and its wholly owned subsidiary have a complete unity of interest.").

Although the Court grants leave to amend, the Court will dismiss Plaintiffs' claims with prejudice if Plaintiffs' amended complaint fails to plausibly allege standing and at least one cause of action. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009), *as amended* (Feb. 10, 2009) (holding that failure to correct pleading deficiencies after dismissal is a "strong indication" that further amendment would be futile); *see also Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) ("A district court's discretion to deny leave to amend is 'particularly broad' where the plaintiff has previously amended." (quoting *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996))).

//

//

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED with leave to amend.  Plaintiffs shall file an amended complaint within fourteen days of this Order.  Upon filing the amended complaint, Plaintiffs shall also file a redlined version comparing it to the original complaint.

**IT IS SO ORDERED.**

Dated: June 20, 2025

Eumi K. Lee
United States District Judge

13